UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DANIEL WRIGHT, JR.,

                                    Petitioner,                          9:06-CV-0319
                                                                        (GTS/GHL)

                v.

JAMES CONWAY, Superintendent, Attica Correctional Facility,

                                    Respondent.

_____

APPEARANCES:                          OF COUNSEL:

DANIEL WRIGHT, JR.
Petitioner *pro se*
Attica Correctional Facility
P.O. Box 149
Attica, NY 14011-149

HON. ANDREW M. CUOMO                  FREDERICK H. WEN, ESQ.
Office of the Attorney General        Assistant Attorney General
State of New York
Counsel for Respondent
120 Broadway
New York, New York 10271

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION & ORDER[1]

        Petitioner Daniel Wright, Jr., *pro se*, is an inmate in the custody of the New York State

Department of Correctional Services.  After a bench trial in New York State Supreme Court,

County of Madison, Petitioner was found guilty of two counts of rape in the first degree and one

count of assault in the second degree.  Dkt. No. 1.  He was sentenced to serve a term of

_____

        [1] This action has been referred to the undersigned by District Court Judge Glenn T. Suddaby for a report and
recommendation pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3(c).

imprisonment in the aggregate of twenty-five years and post-release supervision of five years. *Id.* He petitioned this Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on the following grounds: (1) The trial court failed to follow lawfully mandated procedures for determining whether a second felony offender sentence was properly imposed; (2) The trial court failed to enunciate on the record which counts of the indictment would be taken into consideration during deliberation; (3) The guilty verdict was against the weight of credible evidence; (4) The evidence adduced at trial was insufficient to sustain a guilty verdict; and (5) Petitioner was deprived of the effective assistance of counsel. (Dkt. Nos. 1, 19.) For the reasons which follow, it is recommended that the petition be denied.

## I. Background

On August 19, 2001, R.L.W. ("Ms. W.") and her nine-year old daughter, E.W., were in their apartment in Canastota, New York. *See* Trial Transcript (11/13/03 & 11/14/03) ("TT") at 5. At approximately 5:00 p.m., Petitioner, who was Ms. W.'s friend, arrived at the apartment. *Id.* at 5, 28. Petitioner, who was approximately forty years old, asked Ms. W. if he could take E.W. to a local convenience store, using his moped. *Id.* at 6-7, 253. Ms. W. agreed. *Id.* at 6-7.

Petitioner drove E.W. to a remote location. TT at 55-56. Petitioner told E.W. to pull down her pants and underwear and to lie on the grass, which she did. *Id.* at 56-57. Petitioner removed his pants and underwear. *Id.* at 57. E.W. testified that Petitioner then "st[uck]" his penis in her vagina for twenty minutes, while punching her in the eye and telling her "to die." *Id.* at 58-59, 61. While this was occurring, E.W. was feeling "scared" and was "screaming" because it "hurt." *Id.* at 60-62. Petitioner then told E.W. to pull up her pants and get on the moped, which she did. *Id.* at 62-63.

Petitioner then drove E.W. to the convenience store where he bought various items.  TT at 63.  Petitioner and E.W. returned to the apartment at approximately 5:20 p.m.  *Id.* at 9, 63-64.  Ms. W. observed that the blood vessels in E.W.'s left eye were broken and that E.W. had "hand marks all over her neck."[2]  *Id.* at 11.  E.W. also had dirt "[a]ll over" herself.  *Id.* at 67.  Petitioner told Ms. W. that he and E.W. had been involved in an accident with the moped.  *Id.* at 10, 12.  E.W. agreed with Petitioner's explanation of events because she was scared that Petitioner "was going to do it to [her] again."  *Id.* at 64-65.   Petitioner remained in the apartment for approximately five-to-ten minutes before leaving.  *Id.* at 12-13, 162.

E.W. then went to the bathroom to take a shower.  TT at 13.  Ms. W. also went into the bathroom.  *Id.* at 14.  When E.W. removed her clothing, Ms. W. observed dirt on E.W.'s backside, extending from her neck to the middle of her back.  *Id.* at 16.  She also observed grass and dirt on E.W.'s "upper thigh or crotch region."  *Id.* at 15.  She further observed that E.W.'s underwear was "[a]ll bloody."  *Id.* at 17.  In response to Ms. W.'s questioning, E.W. "kept repeating" that she had an accident with Petitioner.  *Id.* at 17-18.  After taking a shower, E.W. watched television and then went to bed.  *Id.* at 20, 67.

E.W. subsequently told her mother and other family members about what happened with Petitioner.  TT at 65, 79, 165.  The police and social services departments were contacted.  TT at 21, 80.

On August 22, 2001,  E.W. was examined by Dr. Ann Sutera Botash, a pediatrician at State University of New York Upstate Medical University and an expert in the field of child sexual abuse.  TT at 155, 160.  Dr. Botash opined to a medical degree of certainty that the

---

[2]  E.W. had no injuries when she left the apartment with Petitioner.  TT at 10.

vaginal injuries E.W. sustained were consistent with an act of sexual intercourse and with "adult

penis contact." *Id.* at 182-83, 186.  She also opined that E.W.'s injuries were consistent with

having occurred on August 19, 2001, but later stated that the injuries could have occurred "within

twenty-four hours, either way, of the 19th." *Id.* at 183-84, 189.  She further opined to a

reasonable degree of medical certainty that E.W.'s genital injuries were inconsistent with an

injury occurring as a result of falling off from a moped. *Id.* at 183.

    A bench trial commenced on November 13, 2003.  TT at 2.  On November 14, 2003, the

trial court found Petitioner guilty on all counts. *Id.* at 358.  Petitioner's conviction was affirmed

by the Appellate Division, Third Department, and leave to appeal to the Court of Appeals was

denied. *People v. Wright*, 16 A.D.3d 982 (N.Y. App. Div. 2005); *leave denied* 4 N.Y.3D 982

(2005).  This action followed.

## II.  Discussion

### A.    Applicable Standard of Review

    When reviewing a habeas petition, a federal court is limited to deciding whether a

conviction violated the Constitution, laws or treaties of the United States.  28 U.S.C. § 2241(c)

(2006).  Relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68

(1991); *DiGuglielmo v. Smith*, 366 F.3d 130, 136-137 (2d Cir. 2004).  Under the Antiterrorism

and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief

to a state prisoner on a claim that was adjudicated on the merits in state court proceedings unless

the state court's decision was "contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1) (2006);

*Carey v. Musladin*, 127 S. Ct. 649, 653 (2006); *Campbell v. Burgess*, 367 F. Supp. 2d 376, 380

(W.D.N.Y. 2004).

A decision is adjudicated "on the merits" when it finally resolves the claim, with *res judicata* effect, based on substantive rather than procedural grounds. *Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001). This is so "even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Id.* at 312. To determine whether a state court has adjudicated a claim "on the merits," a federal habeas court must examine three "clues" to classify the state court decision as either (1) resting primarily on federal law or interwoven with federal law; or (2) resting primarily on state procedural law. *Jimenez v. Walker*, 458 F.3d 130, 145 (2d Cir. 2006). "Absent a clear and express statement of reliance on a state procedural bar," decisions in the first category are deemed to have been made "on the merits" of the federal claim. *Id.*

A decision "on the merits" is "contrary to ... clearly established federal law" when it is "either contrary to Supreme Court precedent on a question of law or ... opposite to a relevant Supreme Court case with 'materially indistinguishable' facts." *Johnson v. West*, No. 9:04-cv-751, 2007 WL 952058 at *2 (N.D.N.Y. Mar. 29, 2007) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)). A state court "unreasonably applies" federal law when the state court correctly identifies the governing legal rule in a particular case but applies the rule to the facts in an "objectively unreasonable" manner. *Johnson*, 2007 WL 952058 at *2 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see Brisco v. Ercole*, __ F.3d __, No. 05-4339, 2009 WL 1312413, at *7 (2d Cir. May 13, 2009) (holding that the state court reasonably applied clearly established federal law). Although "[s]ome increment of incorrectness beyond error is required" in order to grant a federal habeas application, that increment "need not be great; otherwise,

habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000); *see also Hawkins v. Costello*, 460 F.3d 238, 243 (2d Cir. 2006).  The state court's determination of a factual issue is presumed to be correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254 (e)(1) (2006); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005), *cert. denied* 546 U.S. 884 (2005); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

**B.      Sentencing Claim**

Petitioner claims that his sentence violates his federal constitutional right to due process because the trial court did not follow certain procedures.  Dkt. Nos. 1, 19.  Specifically, Petitioner claims that the trial court failed to ask whether he challenged the validity or constitutionality of his prior conviction.[3]  Dkt. No. 1 at 2; Dkt. No. 19 at 1-2.

Respondent argues that Petitioner's sentencing claim should be dismissed as unexhausted because Petitioner failed "to present the federal nature" of his claim to the state courts.  Dkt. No. 11-4, at 16, 21.  Respondent also argues that the claim should be dismissed because the claim is a "purely state law claim[]," which is not cognizable on federal habeas review.  *Id.* at 18, 21. Respondent further argues that in any event, the claim is without merit.  *Id.* at 20-21.  For the following reasons, Petitioner's claim should be denied.

An application for a writ of *habeas corpus* may not be granted until the prisoner has exhausted all remedies available in state court unless there is an "absence of available state

---

[3]  Petitioner admitted that he was previously convicted of arson.  Sentencing Transcript at 12.

corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b). To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively. Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in the habeas corpus petition. Substantive exhaustion requires that a petitioner "fairly present" any constitutional claims to the highest state court in the same factual and legal context in which it appears in the habeas petition. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Fama v. Comm'r of Corr. Servcs.*, 235 F.3d 804, 808 (2d Cir. 2000); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)); *Daye v. Atty. Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982).

"To establish that a federal claim was raised in state court, a petitioner must, in the state courts, (1) have relied on federal case law employing federal constitutional analysis; (2) relied on factually similar state cases employing federal constitutional analysis; (3) asserted the claim "in terms so particular as to call to mind a specific right protected by the Constitution"; or (4) alleged a set of facts well within ordinary constitutional litigation." *Stone v. Stinson*, 121 F. Supp. 2d 226, 236 (W.D.N.Y. 2000)(citing *Daye*, 696 F.2d at 194). The requirement that the state court have been given a reasonable opportunity to pass on the federal habeas claim is satisfied if the legal basis of the claim made in state court was the "substantial equivalent" of that of the habeas claim. *Picard*, 404 U.S. at 278; *Daye*, 696 F.2d at 189-90. However, where no real avenue remains by which the claim could be raised, a claim is deemed exhausted. *See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

On direct appeal, counsel argued that the trial court violated New York Criminal Procedure Law ("C.P.L.") § 400.21 by failing to inquire whether Petitioner received a copy of a

statement regarding his previous predicate felony conviction; whether he fully understood the

ramifications of admitting that he was found guilty of a prior felony; and whether he challenged

the constitutionality of the prior conviction.  State Court Records, Exhibit B at p. 13.

C.P.L. § 400.21 provides in part as follows:

> When information available to the court or to the people prior to sentencing for a
> felony indicates that the defendant may have previously been subjected to a
> predicate felony conviction, a statement must be filed by the prosecutor before
> sentence is imposed setting forth the date and place of each alleged predicate
> felony conviction . . . . The defendant must be given a copy of such statement and
> the court must ask him or her whether he or she wishes to controvert any
> allegation made therein.

C.P.L. § 400.21(1), (3).

In rejecting this claim, the Appellate Division found that "the People timely filed a

statement of predicate felony conviction and County Court substantially complied with C.P.L. §

400.21(3)." *Wright*, 16 A.D.3d at 258 (citations omitted).

Counsel placed no reliance on federal case law nor on factually similar state cases.  *See*

State Court Records, Ex. B at 12-13.  Moreover, he made no assertion of the claim "in terms so

particular as to call to mind a specific right protected by the Constitution;" nor did he allege a set

of facts well within ordinary constitutional litigation.  *Id.*  Thus, Petitioner has not fairly

presented his current argument to the state courts.

Moreover, there is no longer a state court in which Petitioner can raise his current

argument.  He cannot present the argument to the Court of Appeals in the future because he is

entitled to only one leave application.   Moreover, raising this argument in a C.P.L. § 440.10

motion would be futile because Petitioner failed to raise this argument on direct appeal.  C.P.L. §

440.10(2)(c) bars collateral proceedings when a criminal defendant has failed to raise the grounds

on direct appeal.  Thus, since no remaining avenue exists in which Petitioner could raise this claim, it is deemed exhausted but procedurally defaulted.  *Coleman v. United States*, 501 U.S. 722, 732 (1991); *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001); *Spence v. Superintendent, Great Meadow Corr. Fac.*, 219 F.3d 162, 170 (2d Cir. 2000).

This Court may review this claim only if Petitioner demonstrates cause for the default and resulting prejudice, or that the failure of the federal court to review the claim will result in a "fundamental miscarriage of justice" *i.e.*, that he is innocent.  *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Coleman*, 501 U.S. at 748-750.  To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule.  *Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 639 (2d Cir. 1999).  When a petitioner has failed to establish adequate cause for his procedural default, the court need not determine whether he suffered prejudice, since federal *habeas* relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, No. 03-CV-0461, 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006)(McCurn, S.J.).

Petitioner fails to show that some objective external factor impeded his ability to comply with the relevant procedural rule.  Thus, Petitioner has not established cause for the default. Petitioner also fails to show that a fundamental miscarriage of justice will result from no federal review of the claim.  Accordingly, Petitioner's claim should be denied.

Further, Petitioner's claim is purely a state law claim that is not cognizable on *habeas* review.  *See Curtis v. Fischer*, 387 F.Supp. 2d 218, 225 (W.D.N.Y. 2005) (holding that to the extent that the petitioner claimed that the trial court failed to follow the procedures set forth in

9

C.P.L. §400.21 for sentencing second felony offenders, he alleged violations of state statutory law which were not cognizable on habeas review) (citing *Estelle*, 502 U.S. at 67-68)). Accordingly, Petitioner's claim should be denied because his claim is purely a state law claim that is not cognizable on *habeas* review.

Finally, even if Petitioner's claim was not procedurally defaulted and was not purely a state law claim, it is firmly established that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). Petitioner was convicted of two counts of rape in the first degree, class B violent felonies, and one count of assault in the second degree, a class D violent felony. TT at 358; *See* N.Y. Penal Law §§ 130.35(1), (4), 120.05(6), 70.02(1)(a), (1)(c), (3)(a), (3)(c). Regarding the rape convictions, the trial court was authorized to sentence Petitioner, as a second felony offender, to eight to twenty-five years. *See* N.Y. Penal Law § 70.06(6)(a). Regarding the assault conviction, the trial court was authorized to sentence Petitioner, as a second felony offender, to four to seven years. *See* N.Y. Penal Law § 70.06(6)(c).

While the sentences imposed for each of the two counts of rape, twenty-five years, were the maximum terms permissible, the sentences did not exceed the statutory ranges. Sentencing Transcript ("S.T.") at 10. The sentence imposed for the count of assault, five years, was well within the statutory range. *Id.* The trial court was also authorized to order the sentences to run concurrently. N.Y. Penal Law § 70.25. Accordingly, no federal constitutional issue is presented here, since the sentences are within the applicable statutory ranges. Therefore, Petitioner's claim

should be denied.[4]

## C.  Announcement of Counts

Petitioner claims that his federal constitutional rights to due process and a fair trial were violated when the trial court failed to enunciate on the record which counts of the indictment would be taken into consideration during deliberation.  Dkt. No. 1 at 2; Dkt. No. 19 at 3-4.

Respondent argues that Petitioner's claim should be dismissed as unexhausted and procedurally barred.  Dkt. No. 11-4, at 16, 21-22.  Respondent further argues that in any event the claim is without merit.  *Id.* at 20-21.

Petitioner did not raise this federal constitutional argument on direct appeal and there is no longer a state court in which Petitioner can raise this argument.  Therefore, the claim is deemed exhausted but procedurally defaulted.  Moreover, Petitioner has failed to establish cause for the default or that a fundamental miscarriage of justice will result from no federal review of the claim.  In addition, Petitioner's claim is purely a state law claim that is not cognizable on *habeas* review.

---

[4]  To the extent that Petitioner's claim could be viewed as a challenge under the Eighth Amendment's prohibition of cruel and unusual punishment, that claim also fails.  The Eighth Amendment forbids only extreme sentences which are "grossly disproportionate" to the crime of conviction.  *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003); *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991).  It is well-established that a sentence of imprisonment that is within the limits of a valid state statute is not cruel and unusual punishment in the constitutional sense.  *See White*, 969 F.2d at 1383.  The imposed sentences were within applicable statutory ranges and were not grossly disproportionate to the crimes of conviction.  Therefore, to the extent that Petitioner's claim could be viewed as an Eighth Amendment challenge, this claim should be denied.

Moreover, to the extent that Petitioner is asserting a claim based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), (Dkt. No. 19 at 1-2), this claim is deemed exhausted but procedurally defaulted because Petitioner never raised this claim in state courts and there is no longer a state court in which Petitioner can raise this argument.  Moreover, Petitioner failed to establish cause for the default or that a fundamental miscarriage of justice will result from no federal review of the claim.

Further, even assuming *arguendo* that the claim was cognizable on federal *habeas* review, it is barred by an independent and adequate state procedural ground.  Generally, a federal court may not reach the merits of a petitioner's *habeas* claim if the state courts' rejection of the petitioner's federal claim rested "on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  "To determine whether a state procedural bar is adequate to support the judgment, a federal habeas court should look to whether the state rule at issue is firmly established and regularly followed." *Clark v. Perez*, 510 F.3d 382, 391 (2d Cir. 2008).  When the state court bases its decision on an independent and adequate state procedural bar, a petitioner may only seek *habeas* review if he or she shows "cause for the default and prejudice resulting therefrom." *Levine v. Commissioner of Correctional Services*, 44 F.3d 121, 126 (2d Cir. 1995).

On direct appeal, counsel argued that the trial court violated C.P.L. § 320.20.  State Court Records, Ex. B at 14-15.  This section provides in relevant part:

> Before considering a multiple count indictment for the purpose of rendering a verdict thereon, and before the summations if there be any, the court must designate and state upon the record the counts upon which it will render a verdict.

C.P.L. § 320.20(5).

In rejecting this argument, the Appellate Division found that Petitioner's claim was "unpreserved.  In any event, the court's failure to specify the counts is harmless error because defendant was convicted only of offenses charged in the indictment." *Wright*, 16 A.D.3d at 983 (citations omitted).  The failure to object at a trial (or other proceeding) when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and independent state ground. *Brown v. Perlman*, No. 07 Civ. 8672, 2008 WL 2009220, at *17 (S.D.N.Y. May 8,

2008) (citing, *inter alia*, *Wainwright v. Sykes*, 433 U.S. 72, 86 (1977); *Franco v. Walsh*, 73 Fed. Appx. 517, 518 (2d Cir. 2003)).  Thus, by finding that Petitioner's claim was unpreserved, the Appellate Division based its decision on an independent and adequate state procedural bar.

Petitioner may only seek *habeas* review if he shows "cause for default and prejudice resulting therefrom."  *Levine*, 44 F.3d at 126.  Here, Petitioner has not shown cause and prejudice.  Accordingly, Petitioner's claim should be denied.

## D.    Weight of the Evidence

Petitioner next argues that the verdict was against the weight of the evidence.[5]  Dkt. No. 1 at 2.  However, "[w]eight of the evidence" review of a conviction is a product of New York state statute and therefore merely a state law issue.  *See* C.P.L. § 470.15; *Ward v. Herbert*, 509 F.Supp. 2d 253, 263 (W.D.N.Y. 2007) (citations omitted).  Because federal habeas corpus review is not available to remedy mere errors of state law, *see Estelle*, 502 U.S. at 67-69, no cognizable federal issue is presented by a habeas claim challenging the weight of the evidence adduced at trial.  *See Feliz v. Conway*, 378 F.Supp. 2d 425, 430 n. 3 (S.D.N.Y. 2005) (citations omitted); *Glisson v. Mantello*, 287 F.Supp. 2d 414, 441 (S.D.N.Y. 2003) (citations omitted)).  Therefore, Petitioner's claim that the Appellate Division erred is not cognizable on federal *habeas corpus* review.  Accordingly, this claim should be denied.

---

[5]  The Appellate Division rejected this claim, as follows:

> Nor is the verdict against the weight of the evidence, inasmuch as the only evidence tending to suggest innocence is defendant's own testimony that the victim suffered her injuries after falling off of his moped.  County Court clearly credited the victim's account, which was uncontradicted by any compelling evidence offered by defendant and was not "so unworthy of belief as to be incredible as a matter of law.

*Wright*, 16 A.D.3d at 983 (citations omitted).

**E.     Sufficiency of the Evidence**

Petitioner argues that the evidence was insufficient to support the guilty verdict.  Dkt. No.

1 at 2; Dkt. No. 19 at 5-6.  The Appellate Division rejected this argument as follows:

> Initially, we cannot agree with defendant's contention that his convictions are
> unsupported by legally sufficient evidence.  The nine-year-old victim testified that
> defendant, who was approximately 40 years old at the time, took her on his moped
> to a remote location, directed her to take down her pants and underwear, punched
> her in the eye, told her to die and forced his penis into her vagina.  A pediatrician
> who examined the victim three days later testified that the victim suffered
> significant bruising of her face, head and neck with hemorrhaging in her eyes.
> She was also found to have vaginal tearing consistent with forcible sexual
> intercourse.  The minor inconsistencies in the victim's testimony concerning the
> location where defendant attacked her raised credibility issues only and did not
> render the other evidence insufficient.

*Wright*, 16 A.D.3d at 982-83 (citations omitted).

A challenge to the sufficiency of the evidence, in contrast to a claim regarding the weight

of the evidence, is amenable to federal *habeas* review.  *See Ponnapula v. Spitzer*, 297 F.3d 172,

179 (2d Cir. 2002) (citing *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)).  The Due

Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against

conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

crime(s) with which he is charged.  *See Fiore v. White*, 531 U.S. 225, 228-29 (2001); *Jackson v.*

*Virginia*, 443 U.S. 307, 315 (1979); *In re Winship*, 397 U.S. 358, 364 (1970).  This inquiry "does

not focus on whether the trier of fact made the correct guilt or innocence determination, but

rather whether it made a rational decision to convict or acquit."  *Herrera v. Collins*, 506 U.S.

390, 402 (1993).  A *habeas* petitioner claiming that there was insufficient evidence supporting

the conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record

evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a

reasonable doubt." *Jackson*, 443 U.S. at 324; *Schlup v. Delo*, 513 U.S. 298, 323 n. 38 (1995).

The "assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup*,

513 U.S. at 330 (1995).  The reviewing court is required to consider the evidence in the light

most favorable to the prosecution, and draw all inferences in its favor.  *Jackson*, 443 U.S. at 319.

Thus, the relevant inquiry in this regard is "whether the evidence adduced at trial could support

any rational determination of guilty beyond a reasonable doubt."  *United States v. Powell*, 469

U.S. 57, 67 (1984) (citing *Jackson* ) (other citations omitted).

    "When considering the sufficiency of the evidence of a state conviction, '[a] federal court

must look to state law to determine the elements of the crime.'"  *Ponnapula*, 297 F.3d at 179

(quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)); *see also Fama v. Comm'r*

*of Cor. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (citing *Quartararo*).  Therefore, this Court must

consider the elements the prosecutor was required to prove beyond a reasonable doubt to properly

convict Petitioner.

    At issue in this case are sections 130.35(1), 130.35(4), and 120.05(6) of the New York

Penal Law.  Section 130.35(1) provides that a person is guilty of rape in the first degree when he

or she engages in sexual intercourse with another person by forcible compulsion.[6]  McKinney's

Penal Law § 130.35(1) .  Section 130.35(4) provides that a person is guilty of rape in the first

degree when he or she engages in sexual intercourse with another person who is less than thirteen

years old and the actor is eighteen years old or more.  McKinney's Penal Law § 130.35(4).

---

[6] Sexual intercourse "has its ordinary meaning and occurs upon any penetration, however slight."  McKinney's Penal Law § 130.00(1).  Forcible compulsion means to compel by either (a) use of physical force; or (b) a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person, or in fear that he, she or another person will immediately be kidnapped.  *Id.* at § 130.00(8).

Section 120.05(6) provides that a person is guilty of assault in the second degree when "[i]n the course of and in furtherance of the commission or attempted commission of a felony, other than a felony defined in article one hundred thirty which requires corroboration for conviction, or of immediate flight therefrom, he, or another participant if there be any, causes physical injury to a person other than one of the participants."  McKinney's Penal Law 120.05(6).

Here, the evidence adduced at trial could support a rational determination that Petitioner was guilty beyond a reasonable doubt.  E.W. testified that after Petitioner drove her to a remote location, Petitioner told E.W. to pull down her pants and underwear and to lie down on the ground.  TT at 56-57.  E.W. testified that Petitioner then "st[uck] his penis" in her vagina for twenty minutes while punching her in the eye and telling her "to die."  *Id.* at 58-59, 61.  While this was occurring, E.W. stated that she was "scared" and was "screaming" because it "hurt."  *Id.* at 157-58.  It is undisputed that E.W. was nine-years old and Petitioner was approximately forty-years old at the time of the incident.  *Id.* at 4, 47, 253.

E.W.'s testimony was corroborated by the testimony of her mother.  Ms. W. testified that when E.W. returned to the apartment, Ms. W. observed that the blood vessels in E.W.'s left eye were broken and that E.W. had "hand marks all over her neck."  TT at 11.  E.W. also had dirt "[a]ll over" herself.  *Id.* at 67.  Upon removal of E.W.'s clothing, Ms. W. also observed dirt on E.W.'s backside, extending from the neck area to the middle of her back.  *Id.* at 16.  She also observed grass and dirt on E.W.'s "upper thigh or crotch region."  *Id.* at 15.  She further observed that E.W.'s underwear was "[a]ll bloody."  *Id.* at 17.

E.W.'s testimony also was corroborated by the testimony of Dr. Botash.  Dr. Botash testified that during the examination, E.W. had a "flat affect," which Dr. Botash stated was "very

consistent with post-trauma." TT at 164.  There was "pretty significant bruising" on E.W.'s face, head, and neck.  *Id.*  E.W. also displayed "petechiae, [which are] little tiny bursts of blood vessels over the whole [left] side of her face [from] the neck up."  *Id.* at 165.  Dr. Botash opined that the petechiae on E.W.'s neck and head were caused by choking and direct trauma.  *Id.* at 166.  Dr. Botash also noted that E.W.'s "left eye more than the right [eye]" showed subconjunctival hemorrhaging, which she opined was caused by "direct trauma and/or some kind of choking episode."  *Id.* at 167.  E.W. also showed a "linear abrasion" on the left side of her neck, as well as a bruise over her lower back.  *Id.* at 167-69.

Dr. Botash testified that the vaginal examination revealed significant redness of the hymen and all of the tissue inside of the labia.  TT at 171.  She also observed a tear of the hymen at the six o'clock position.  *Id.* at 172.  There also was dirt around E.W.'s vagina, "almost to the anus area."  *Id.* at 178.

Dr. Botash opined to a medical degree of certainty that the vaginal injuries E.W. sustained were consistent with an act of sexual intercourse and with "adult penis contact."  TT at 182-83, 186.  She also opined that E.W.'s injuries were consistent with having occurred three days prior on August 19, 2001, but later stated that the injuries could have occurred "within twenty-four hours, either way, of the 19th."  *Id.* at 183-84, 189.  She further opined to a reasonable degree of medical certainty that the genital injuries were inconsistent with an injury occurring as a result of falling off from a moped.  *Id.*

Based on the facts and circumstances of this case, a trier of fact could rationally find beyond a reasonable doubt that Petitioner was guilty of the charged crimes.  The Appellate Division did not act contrary to or unreasonably apply Supreme Court precedent in rejecting

17

Petitioner's claim.  Accordingly, the petition on this ground should be denied.

**F.      Effectiveness of Trial Counsel**

Petitioner asserts that his trial counsel was ineffective.  Dkt. No. 1 at 2.  However, Petitioner's filings (Dkt. Nos. 1 and 19) fail to clarify trial counsel's alleged errors.  *See* Dkt. Nos. 1, 19.  Therefore, the Court will refer to Petitioner's brief on direct appeal to ascertain the basis for this claim.

On direct appeal, Petitioner argued that his trial counsel failed to investigate or prepare the only defense available, namely the lack of DNA evidence.  State Court Records, Ex. B at 18-22.  By way of example, Petitioner claimed that trial counsel failed to "present a defense expert to explain that there was no [DNA] evidence present because the incident most likely didn't occur and that if it did occur as the victim sta[t]ed, there should have been some evidence."  *Id.*  Petitioner also claimed that trial counsel failed to ask Dr. Botash on cross-examination "as to why there was a lack of [] DNA evidence."  *Id.*  The Appellate Division found that trial counsel's "representation was meaningful and adequately addressed the absence of DNA evidence linking defendant to the alleged rape."  *Wright*, 16 A.D.3D at 983.  This was a reasonable application of clearly established federal law.

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.  To establish a violation of this right to the effective assistance of counsel, a *habeas* petitioner must show both: (1) that counsel's representation fell below an objective standard of reasonableness, measured in the light of prevailing professional norms; and (2) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional

performance, the outcome of the proceeding would have been different.  *Strickland v. Washington*, 446 U.S. 674, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland.).*[7]  There is a strong presumption that counsel's conduct fell within the wide range of reasonable assistance and that counsel's actions constituted sound trial strategy under the circumstances.  *Cuevas v. Henderson*, 801 F.2d 586, 589-90 (2d Cir. 1986).

The record shows that trial counsel's performance was objectively reasonable.  During the trial, counsel submitted a DNA report (Defendant's Trial Exhibit B) into evidence.  TT at 216-18. Counsel then cross-examined Michael Adsit, an investigator with the Canastota Police Department.  *Id.* at 193, 216.  During that examination, Investigator Adsit admitted that the report showed no indication of Petitioner's semen on E.W.'s underwear.  *Id.* at 218.  He also admitted that the report showed none of Petitioner's DNA on E.W.'s clothing.  *Id.*  Further, on recross-examination, he admitted that there were blood stains on E.W.'s underwear, but that "no DNA [was] found on that." *Id.* at 224.  Moreover, during summations, trial counsel highlighted the lack of DNA evidence on E.W.'s underwear and clothing.  *Id.* at 345.

With regard to Petitioner's claim that trial counsel was ineffective because he failed to call an expert witness, "there is no *per se* rule that requires trial attorneys to seek out an expert." *Gersten v. Senkowsk*, 426 F.3d 588, 607, 609 (2d Cir. 2005) (noting that expert consultation is not always necessary in order to provide effective assistance of counsel in child sexual abuse cases).  Moreover, Petitioner simply speculates that an expert witness would have testified that

---

[7]  In *Williams v. Taylor*, the Supreme Court declared that "the rule set forth in *Strickland* qualifies as "clearly established Federal law [.]" *Williams*, 529 U.S. 362, 391 (2000).

the lack of DNA evidence meant that the "incident most likely didn't occur and that if it did occur . . . there should have been some evidence."  State Court Records, Ex. B at 19.

Regarding Petitioner's claim that trial counsel was ineffective by failing to cross-examine Dr. Botash regarding the lack of DNA evidence, "[d]ecisions about 'whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature' and generally will not support an ineffective assistance claim."  *States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987).  Moreover, Dr. Botash was qualified to testify only as to matters concerning child sexual abuse and was never qualified to testify regarding DNA evidence or the lack of DNA evidence.  TT at 160; *see* Fed. R. Evid. 702 (limiting expert testimony to those "qualified as an expert by knowledge, skill, expertise, training, or education").

Finally, Petitioner has failed to demonstrate resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.  Therefore, Petitioner has failed to meet either prong of the *Strickland* standard.  Accordingly, the petition on this ground should be denied.[8]

**WHEREFORE**, based upon the foregoing, it is hereby

**RECOMMENDED**, that the petition for a writ of habeas corpus (Dkt. No. 1) be

**DENIED** and **DISMISSED**.  Furthermore, I find that Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate

---

[8]  To the extent that Petitioner is claiming that his trial counsel was ineffective because he failed to "challenge[]" the contradictory nature of certain evidence related to the victim's bruising around her eye, and failed to "develop" the "prior volatile relationship" between Petitioner and Ms. W.  Dkt. No. 19 at 5-6, these claims were never raised on direct appeal and there is no longer a state court in which Petitioner can raise this argument.  Therefore, they are deemed exhausted but procedurally barred.  Moreover, Petitioner has failed to establish cause for the default or that a fundamental miscarriage of justice will result from no federal review of the claim.

of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).  Therefore, I recommend that no certificate of appealability issue with respect to any of Petitioner's claims; and it is further

**ORDERED** that the Clerk serve copies of the electronically-available-only opinions cited on pages 5, 9, and 12, on Petitioner.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: May 19, 2009
      Syracuse, New York

George H. Lowe
United States Magistrate Judge